al. Thank you. May it please the Court. My name is Thomas Michel and I'm here this morning on behalf of Diane Weaver. The two issues presented to the Court are whether the trial court improperly failed to remand this matter back to the State Court. You may need to talk up. As much for the people behind as I am. I apologize. That's all right. The first issue is whether the District Court improperly failed to remand this matter back to State Court. And the second issue is whether the District Court properly granted summary judgment on behalf of the MetLife defendants and Perry. I know this Court is very familiar with the facts and so I will jump in quite quickly. I believe on the remand issue, this case is largely decided by this Court's prior opinion in Dolak v. Michelson and the First Circuit Court of Appeals opinion in CASA Office, which are cited in the briefs. In those cases, this Court had faced almost an identical situation. What to do with, in this case, where in the State Court action, the plaintiff had alleged a claim against the MetLife parties but did not know the name of the beneficiary, although my previous counsel attempted to find that out and then when I was retained, I tried to find out. And the cases you mentioned to us, are those cases that precede the amendment to 1441B1? They are after. They're after. Yes. They're cited at 264 Fed 3rd 470. They were faced very much with a similar situation in our case, Your Honor, looking at 1441A to see whether you can consider a fictitious defendant or not. This Court, in its prior opinion, given facts very similar to this case, held that you do look at those, that unnamed defendant. And I will say our case is even more striking because this was not some, no allegations of fraudulent joinder, no allegations of an array of various and sundry different type of defendants. It was a particular individual who we were trying to identify and would have sued had we known the name. But Perry, Perry was already in the suit, wasn't he, when MetLife had already brought him into the suit? MetLife brought Perry by name into the suit the day after Perry, I'm sorry, MetLife removed the case. And you don't dispute that Perry is a citizen of Texas? No. I don't think anybody disputes he's a citizen of Texas. We were, we were trying to find out who he was. We alleged that he had, that we think somebody has been receiving it because all we knew at that time was that Mr. Hickey had passed away. Our client wasn't getting the money, so we figured it had to be going somewhere. Previous counsel and ourselves attempted to find out who that person was, so we alleged him as a, an unknown to Perry. But since Perry was already in the suit when, when he was, when you added him, couldn't the court exercise supplemental jurisdiction over him? I don't believe so. If you look at the case law in this, in this circuit and the DOLAC matter, you don't look, you don't, the only way you can exercise supplemental jurisdiction, it has significant problems. The only way you can get to supplemental jurisdiction, if for some reason you're going to disregard, you've got to make the, the initial determination whether you are going to disregard the unknown payee. And this court says, no, you don't. You consider him. In our case, as I said, is extremely strong because it is a specific individual. We're not making, we're not doing any kind of shotgun pleadings. We're just trying to find out who that person was. That's why we didn't name him, because we didn't know who he was. Obviously Metknife had known who he was for years. They were distributing the money out to him. And so they won't tell us, we file suit, unknown payee, and then we get removed, and the day after they add him, in their answer, allege he's a citizen of the state of Texas. It's undisputed. My client's a citizen of the state of Texas. We've got, we do not have complete diversity. It seems like a harsh rule, but it is a bright line rule. So, so what aspect of you, they didn't, you aren't contending they had an obligation to tell you. And the text itself seems strict, so is the argument that, that in fact, he was specifically identified, he was the only one, is that? It, it helps. I think it makes our stronger, even stronger than the Dolak case, because here this Court was faced with that, following the First Circuit's opinion, could including under, it's under 1447e, concluding that applies also to the identification of fictitious defendants after removal. And that's what this Court held specifically, saying we hold that 1441a applies only to John Doe defendants as such, not to subsequently named parties identifying one of those fictitious defendants. And therefore, the Court, almost exactly on point as our case, the only nuance, and I'll get to it in a second, Your Honor, is I think the only slight twist is the interpleader action, which I think is also misleading. But based on Dolak, based on CASA, and the cases cited in this case, it's on all fours. Now, they're going to allege we, in our original petition, we didn't allege specifically enough a cause of action against the fictitious defendant. But we, in our original petition, we clearly listed them as a party in the caption. We listed them under the parties, unknown payee, who's believed to be a resident of the State of Texas. And we clearly allege the underlying fact that the parties are, the payments are going to a third party who is believed to be a resident of the State of Texas. But the Met defendants won't disclose the name of the person. So we wouldn't be here if I had known who the person was, we would have had that person named and sued. Now, to answer your question, Judge Davis, about the interpleader does not create jurisdiction. And it's not a pure, all the parties are in the case, so interpleader's improper. Weaver, Perry, and the MetLife defendants, so interpleader's not proper. And further, they're not an innocent stakeholder, because we have a claim against them for the breach of the agreements for the $112,000 they had already distributed. So that's not an innocent stakeholder. We still have our breach of contract. And we cited the case to the Lennon versus Scott Stringfellow case in our deal, but you can't do an interpleader to try to create jurisdiction and get supplemental jurisdiction that way. So we believe, in this case, the DOLAC is exactly on point. It's 1447E that allows you to, and in our case, we're not even, they discuss the nuances between adding parties. Are they an added party? Are they a substituted party? In this case, this court held it doesn't really matter. They were a fictitious defendant, specifically identified with the conduct that was happening, which they received benefits. The day after we found out, we filed a motion to amend our pleading. It was granted by the district court. So Perry was, our amended pleading against them destroys diversity jurisdiction. Where the district court made a mistake was looking at the supplemental jurisdiction for interpleader. Is there any authority since 1988 that suggests it was improper for MetLife to remove the case despite knowing Perry's identity and citizenship? Now, I don't know if there's any specific, you're talking about withholding the name or the action in removing. I'm sorry? Your Honor, I apologize. The failing to tell us the name of the defendant. Well, my point is, you know, 1441A1, I'm sorry, B1 was enacted in 88. Correct. And it tells courts to disregard the citizenship of these fictitious named defendants for removability purposes. Right. And my question is, since then, since the enactment of 1441B1. Yes. Has any court said that it's improper, that it would have been improper for MetLife to remove that case to federal court despite knowing Perry's identity and citizenship? Well, I don't know if it's that specific about knowing the identity. I don't even think you need that much of a mens reis for secretly holding that name. But the, the Doliak case is 2001. This court's opinion is 2001. Well, if you realign the parties here, though, don't you have MetLife versus your client and Perry? Yeah. If we, if you want to, I don't think we need to realign the parties. I think we're the plaintiff against the MetLife defendants and Perry. That's a straightforward State law claim in our opinion. There's no, there's certainly no Federal question here. And it's only, the only basis for removal is undisputedly diversity jurisdiction. And so, as I said, we have a, we still have a valid claim. Even if you accept them to true, and you even accept that they could do this interpleader action, the district court is absolutely silent about our claim for the $112,000 for breach of the agreements that were already distributed. That's not an interpleader. That's a direct claim against MetLife and a direct claim against Perry. Those are classic State law claims. You know, we wouldn't be here today at all if we had just been given the name of the individual and there would be, there's no doubt there's complete diversity and it's not a strict interpleader at all. The cases have been followed up. There are a number of district court cases that have followed the Doliac case of this court's opinion about fictitious defendants. Fourteen. Being joined. Yes, being joined, absolutely. It destroys diversity. And what about their argument that the claim against him wasn't one until the State law claim wasn't one that involved joinder? Correct. It's that subtlety. They're trying, I mean, well, Doliac discusses the difference between substitution of parties, because ours is a very isolated where you have other parties, like maybe there's other unknown people who did wrongful acts we don't really know yet. That's not even our case. And so this court struggled with whether, is this a substitution? Right. Or is it a new claim? Yeah, or is it a new claim? And this court said it really doesn't matter, okay? 1447E allows this. It's not a tough question. This is a State court jurisdiction case through and through, except for these procedural, perhaps creativity on the defendant's part to. You probably, in case we do decide that that jurisdiction is proper, you probably want to get to your second issue. I do, and I am running out of time on that. I think the documentation on the breach of contract is, I want to point out to the request for change of beneficiary. Now, the biggest thing is that of the settlement agreement. It's undisputed. My client, my husband and my client was the wife. He was injured. They had claims. They sued. She had claims. He had claims. They settled. They signed releases. And she was put in the settlement agreement. Now, most importantly is she dismissed her claims. She released her claims. And in the actual settlement agreement, and the language is what needs to be constructed or construed, is the context is very important. It says, quote, if Larry Hickey dies before receiving all payments set forth in this paragraph, such payments shall be made as due to Diane Hickey. Diane Hickey is Ms. Weaver today. And it says, such payments shall be made. So if you look at the context, she gets up her claims. She signed releases. And she gets a mandatory statement in here that if he dies, she understands he's the quadriplegic. He'll get the payments during his lifetime. But should he die, because his life expectancy would be shortened, and it was, in fact, was, she shall, if living, get those. Then after that, if not her, to the estate of him. I think that's the end of the day. I think that's the end. There is a paragraph at the end, claimant, says the word claimant, reserves the right to request to change the beneficiary of future periodic payments. The problem is, I don't think that was clearly meant, and granted, it is not a picture of great draftsmanship. I think both sides will agree to that. But clearly, if you read in the context, that should be after Ms. Hickey, if Diane, Ms. Weaver were to pass away, they could change the beneficiary. That makes sense. That is a holistic, comprehensive. It is singular, and it would make sense that she negotiated for the lump sum, and then he's going to get this stream. And if exactly like what happened, there's a divorce and someone else is beginning to take care of him, it would mean that hers was contingent and not irrevocable. Well, with all due respect, none of that's in the document. Well, but the singularity of the word claimant is in the document. It's a capital C, and it's not a defined term. Now, if you look at the document signed by Mr. Hickey on the change of beneficiary, he signs as a payee, not as the claimant. And it also says that the change of beneficiary is effective if it's signed by the assignor and is not signed by the assignor. And if you read it, Record 456, this change will not be effective until the assigner has agreed. Before your time runs out, do you have any Texas law case that suggests that an initial beneficiary has standing to challenge, or after the rights have vested for the claimant? Yeah. I think this is pure Texas contract law, which we cited in our briefs. This is a bargain for exchange. She gave up her claims in exchange for the settlement agreement, which provides that irrevocable vesting. It was vested. It said shall. She shall receive them. And this is a secondary argument that the change of beneficiary was improper, and it bolsters our argument that the word claimant is not a defined term in the not as claimant. In fact, at the bottom of the page, it says claimant, parentheses, if different than payee. He signs as payee, not claimant. And that's in the record. I think there's three sentences in a row right there on the end of the statute, I mean, of the agreement. However, it says if Larry Hickey dies before receiving all payments set forth in this paragraph, such payments shall be made as due to Diane Weaver, his wife is living. I would, yeah, that, yeah, okay. They want to take it away with this vague sentence at the end, this dangling clause that says claimant reserves the right to request to change the beneficiary of future period of payments. I would argue this is a matter of contract interpretation, and I know minds can differ. You're going to get a little time. I apologize. You have that time. Thank you. Okay. I would argue that to read that context in the whole, when you look at the settlement agreements, the release, the lawsuit, the release, the settlement document, that she agreed he could have them while he lived, which makes sense. But after he dies, it's mine. And it makes sense to make the right choice. Thank you. Thank you. Thank you. Thank you very much. Let's see, Mr. Whittaker. Good morning. May it please the Court, my name is Andrew Whittaker. I represent Metropolitan Life Insurance Company, the annuity issuer, and Metropolitan Tower Life, the annuity owner. I'm going to focus on the procedural issues and allow Mr. Leister to focus on the substantive issues, although I'm prepared to address any substantive issue the Court would like to raise. That said, we believe that Judge Means got both the procedural ruling and all of the merits rulings correct, and his decision should be affirmed in their entirety. We think it's appropriate here to look at the events that occurred on a step-by-step basis. First step was the notice of removal. When MetLife removed this case, that removal was indisputably proper because there were only two parties at that time. We had a Texas resident on the one hand, a New York resident on the one hand, the requisite amount and controversy. All of those facts are undisputed. Now, there was a reference in the complaint to an unknown payee. He's in the style, and he's in the party section that just says, unknown payee who's getting the money. But if Section 1441b-1 is to have any meaning, that reference is entirely disregarded. That is a fictitious defendant who shall be disregarded for removal purposes. Roberts. They didn't press the 1441 question today in argument. But your position, the language in their brief, you would accept that it does allow someone like your client to lie behind the log? It does. Well, I guess I'm not fond of the lie behind the log characterization, but yes. And that's what the Supreme Court held in the Roche case, the Lincoln Property case in 2005, where the other — where the named defendant was a parent company. And it was a real estate-related dispute, Lincoln Property out of Dallas. And there was a — it had an affiliate in Virginia that actually controlled the property. And the Supreme Court — actually, the Fourth Circuit held that remand was required because the removing defendant, the parent company, knew about the local affiliate who was the diversity — And I didn't hear them press that. Their emphasis today is 1447e in our Doliak case. So on the theory that Perry really was joined, and that still defeats jurisdiction. And it's really interesting that they rely on Doliak and Cassus Machinery because neither one of those cases is cited in their briefs before the Court. Not one word. But he specifically said Doliak was. I wasn't having a firsthand recollection. Yeah. They were not in their briefs. I just checked. But you sound like you're prepared to discuss it. Absolutely. Doliak has nothing to do with this case. But that goes along with the step-by-step process. So we remove the case. That's proper. The fictitious payee is ignored. That's what 1441b1 says. Then we assert a claim against Mr. Perry. We bring him in under Rule 22, which allows the assertion of a claim like that. And the rules and the statutes are incredibly deferential to the assertion of interpleader-type claims. Your client wants to know who to pay. Absolutely. And there has to be some place for that to happen. And so that's why, like, under statutory interpleader, which isn't at play here, but I think it's instructive, if you have minimal diversity, folks from two different states, and $500 in controversy, you can get to federal court. And that's got to be the lowest jurisdictional threshold. But I think it recognizes the fact that there has to be some place to have a stakeholder's paper graded. Okay? So when we join Mr. Perry under Rule 22, he is a party to the case at that point, when he was not previously a party to that case. Within 20 days, we get Mr. Perry served, and he enters in appearance. And he comes in, and he says, I want to keep the money that I've got so far, and I want to get the money in the future. Then after that, Ms. Weaver files her motion to amend. And so she's not joining a party at that point. She is seeking to assert a claim against an existing party. And so that's the distinction that Judge Means recognized, and I believe the last footnote of his opinion, that 1447e, by its terms, requires the or provides that if a plaintiff seeks leave to join a new party who is a diversity killer, then the Court has the option, including to remand the entire case, because diversity doesn't exist. It's discretion. If the threshold is met that the plaintiff is seeking to join the party. And that's not at all what we had here. The party was existing, so therefore, it's not a, is this a joinder situation. It is, does supplemental jurisdiction under 1367 exist over the claim that she wants to assert against Mr. Perry? 1447 has nothing to do with this case. And both Doliak and the case on which it was based from the Fifth Circuit, the Casas machinery case, were both 1447 cases where the case was properly removed because the fictitious defendant was not in the case, was not considered part of the case. But then later on down the road, when the plaintiff, not the defendant, when the plaintiff seeks leave to join that party, then the Court says, okay, 1447e applies because it's after removal the plaintiff seeks to join an additional defendant whose presence would destroy jurisdiction. And so at that point, the Court has the discretion to either deny joinder or permit the joinder and remand. 1447 has nothing to do with this case. Doliak was the one who argued in 1447 to the district court. Is that why? I don't remember the final footnote. Is it? Can you read it? Yeah. No. Doliak was the one who argued. It's funny because Doliak and Casas machinery were the basis of the motion to remand. Right. And so we took those cases head-on. Judge Means addressed those cases and found them to be not controlling because we had joined Mr. Perry, not Ms. Weaver. So Doliak has nothing to do with this case. And so under supplemental jurisdiction, two parts. Part A says, are the claims that Ms. Perry, that Ms. Weaver is seeking to allege, are they sufficiently related to the underlying claims? Easy. Common nucleus of operative fact, that's an easy question. Then Part B says, well, we're not going to allow, in certain circumstances, supplemental jurisdiction over certain categories of claims. And the concern that supplemental jurisdiction is addressing is the sort of the plaintiff who can't get jurisdiction over a defendant that he wants to sue. Okay? So the plaintiff sues a defendant that he knows will bring in a nondiverse defendant. So that's why 1367B says that supplemental jurisdiction will not exist over parties who are joined under 14, 19, 20, or 24, which are various joinder devices in the parties section of the Federal rules. But conspicuously absent from the listing of rules in 1367B is Rule 22. And Rule 22, by its terms, says that it is a supplement and does not limit the joinder permitted by Rule 20, which is consistent with the overarching notion in both the rules and the code that courts are to be deferential to parties who are facing competing claims. There has to be a place to have their paper graded. And we believe that that here was in Federal court before Judge Means. Now, with respect to — so properly analyzed, each step of the way, removal was proper. Fictitious defendant ignored. Joinder under Rule 22 was proper. Amendment by Ms. Weaver was not adjudged under 1447E. It was adjudged under 1367, and the Court had supplemental jurisdiction over that claim. Now, with respect to some of the issues raised by Mr. Mischel, we take issue with the notion that we were under some sort of affirmative obligation to inform Ms. Weaver of Mr. Perry's identity. Now, first, we think factually this argument fails because there's no evidence in the court that we ever got a request for her identity. The only request that we got was a demand letter from her client — from her lawyer saying you need to pay Ms. Weaver. It didn't say tell us who you're paying. Didn't ask about the identity of the new person. It just said you need to pay Ms. Weaver. We sent a letter back saying we really can't communicate with you because you're not the beneficiary in our records. And rest assured, an insurance company like MetLife is subject to privacy issues and things like that where we can't affirmatively disclose information to a person who is a third party in the record, according to our records, at least. So he had been removed as a — Sotomayor, what was the timeline after the divorce? How soon did he switch the beneficiary to his brother from — The divorce, Your Honor, was in 1999, April of 1999, and then we get the request in in January of 2002. And so the request comes in, and Mr. Perry says I want the — or Mr. Weaver says I want the change of beneficiary form. So we send him the form, and we get it back, and he signs it, and it's a pre-printed form, okay? And he at the time was the payee, the person receiving the benefit. So that's what the blank on that form requires. So he signed it, and he sent it in to us. We took a look at it, and we reviewed the settlement agreement because we had a copy of that in our file, you know, in connection with the issuance of the annuity. And when we took a look at the settlement agreement, we saw that there were two sections regarding payment. There was the lump sum section that referred to Mr. Hickey, Ms. Weaver, and their attorneys for the lump sum payment, and then there was a periodic payment section that was quite long that said the following payments are to be paid to Mr. Weaver. And at the very, very end of that sentence, there was a sentence that said claimant reserves the right to request to change the beneficiary. That sentence came immediately after the sentence designating Ms. Weaver as the beneficiary. And it's no surprise in a situation like this where the benefits under the annuity were set up where the payments were guaranteed for 30 years. We were going to pay 30 years no matter what, regardless of whether Mr. Weaver passed away or not. And then we would continue to pay after that for as long as he lived. So in the event he died within 30 years, we had to have somebody who we could pay. So it's no surprise there was an initial beneficiary designation that was in favor of his then-wife at the time, Ms. Weaver. And so we notated our records accordingly. But when Mr. Weaver — I'm sorry, when Mr. Hickey makes the beneficiary change request in 2002, we look at the very same settlement agreement, and the last sentence says claimant reserves the right to request to change. And the settlement agreement was signed off on by the insurance company for the defendants in the underlying case. So they had agreed to that power, basically. So whenever we get the beneficiary change request in April of 2000, in early 2002, we look at it, and we have a little checklist that's in the record where we check off and say, okay, so we got on the list. Do we receive a change? Yes. A change request? Yes. Has this been authorized by the insurer for the — you know, the settling insurer? Claimant reserves the right. So we said yes. So — What's the state of Texas law on the initial beneficiary's standing to be able to challenge? She has none. Under the Fidelity Union v. Methvin case, which we've cited in every brief we filed, and which Ms. Weaver has never addressed, the Supreme Court said that a revocable beneficiary can't complain about any defects in the beneficiary change process. So that they have a unvested — Remind me, how did Judge — how was that not a threshold issue for Judge Means? Well, I mean, he addressed Methvin. He did. Oh. But it was in tandem with the analysis of the agreement. So it's contemplating she has standing to dispute — Well, I mean, I don't think he — I don't think he put standing at the front of the argument. I think he just interpreted the agreement, and then he said, and by the way, she can't complain about this C. Methvin. What's your analysis of the correct sequence? You know, I mean, I guess I generally consider standing to be a — I mean, I think the result is the same either way. I mean, I think that standing is generally thought of as to be a threshold, you know, issue. But, I mean, here I think the language, as Judge Means found, was clear, that, you know, she did not have a vested right. Since she had a separate claim, doesn't she have an argument that she's also a claimant? Well, the — there are multiple references, Your Honor, in the section to the claimant, and that tends to be attached to the person who was — suffered the primary injury and is getting the periodic payments. I mean, the — admittedly, the settlement agreement is not a matter of draftsmanship. I guess that's the one thing that Mr. Mischel and I will agree about. Of course, MetLife was not a party to that. So any deficiencies in the settlement agreement really can't be imputed to us. But, I mean, I think whenever you read the placement of that paragraph, you know, that sentence about claimant reserving the right, it's in a paragraph or a section that applies only to Mr. Hickey. But Ms. Weaver also received consideration for her settlement. I mean, she was asserting claims, you know, loss of consortium, things like that. So she indisputably had claims in the underlying case. Well, my reading of this was that the lump sum was primarily to pay the legal fees. Well, I mean, I can't look behind the log on that, Your Honor. I don't know what the net import of that was. What I do know is that the agreement that she signed off on said that that lump sum is being paid to him, her, and the lawyers. So, you know, I think that that was more than adequate consideration for the settlement of her claims. And, of course, we've got, we raise all kinds of issues about separate property and, you know, the right to control and things like that in our brief as well, that support the notion that this was his because he was the one who was injured. And we were entitled, under the insurance code and the family code, to rely on whatever instructions we got from him. So, you see that I'm out of time? Thank you, Your Honor. Good morning, may it please the court. My name is Chris Leister and I represent James Perry, who was the subsequently named beneficiary under this thing. The court has pointed out and brought to everybody's attention the one thing that I think this case really turns on as far as the merits. And that is the language from the settlement agreement which says, claimant, reserves the right to request the change, request to change the beneficiary of future periodic payments. The claimant in this case, there's not much dispute, was Mr. Hickey. And following his divorce, he did exactly that. As I was listening to Mr. Michelle make his argument, he pointed to the language, as he called it, mandatory. Where he says, such payments shall be made, shall be due to Diane Hickey if Larry dies. Well, I think I would agree with that if there had not been a beneficiary change. Such payments should be made to Diane Hickey if Mr. Hickey had in fact passed. But because he reserved the right to make the beneficiary change in the settlement agreement to which Diane Hickey was a part, that's binding on her, that's binding on him, and that's binding on, at the time, Wausau, MetLife's predecessor. Would the jurisdictional calculation have changed if she had brought her claim, the state law claim, against your client at the outset instead of unnamed payee? If she would have brought her case against my client initially, and my client is a citizen, a resident of the state of Texas, the jurisdictional issue would be changed. We would not be here, I agree with that. But that was not the case. And in fact, when she filed her original petition or complaint, I don't think she even made a claim against the unknown payee. She just named him as someone who is receiving money. She didn't make a claim. She subsequently made a claim. But at the end of the day, Mr. Hickey was the claimant. Mr. Hickey had the right to change the beneficiary pursuant to the language from the settlement agreement. And that is supported by the multiple references that were in Judge Means' opinion, wherein he kind of gave common sense use of the term claimant to the fact that Hickey was the one receiving periodic payments. Hickey was the one who had the right to change the beneficiary designation.  Hickey had the designation as being the party receiving the periodic payments. He was the one who had the ability to make requests of MetLife to change the beneficiary. The fact that the payments were to be made solely, the periodic payments were to be made solely to Mr. Hickey, is support for the fact that he was a claimant. Not once, not ever were these payments to be made to Mrs. Hickey, despite her claims to have some sort of beneficiary status at this point in time. I'd like to address briefly a couple of the other arguments that she makes, that she was some sort of a third party beneficiary. I don't think she can be a third party beneficiary in this situation, because she was actually a party to the agreement. She was actually a party to the settlement agreement. So she does not have status to make that claim either. She did receive consideration for the release of her claims, which is a position she takes in some of the papers that she files. Because of the, if you will, the bifurcation between the way the settlement was split, $300,000 to the Hickeys and their lawyers. And then the $550,000 annuity making periodic payments to Mr. Hickey. The sole claim being asserted against my client is the common law claim for money had and received in Texas. You know, money which in equity and good conscience belongs to somebody other than the party that's receiving it. In order to get to that claim, Ms. Weaver has to successfully allege a claim against the MetLife Parties for breach of contract. She does not have a contract with the MetLife Parties. She does not have any kind of an agreement with the MetLife Parties. She has no ability, I don't believe, to make a claim for breach of contract. And so, by definition, her money had and received claim against my client, Mr. Perry, also fails. And lastly, we state in our brief and both MetLife Parties and their brief set forth the fact that when they went through their divorce proceeding, if there was, while this particular set of periodic payments, the annuity payments were not addressed specifically, they were addressed generally in the divorce decree, and generally, payments and monies coming to the husband, in this case, Mr. Hickey, continued to remain his separate property. They were, frankly, coming out of a personal injury damage, personal injury situation, which is separate property and independent. For that reason, Your Honor, we would request that the court affirm Judge Means's ruling and determination. Thank you. Ms. Michelle, do you dispute that in context, the word claimant in the agreement consistently refers to Mr. Hickey? No. You don't dispute that? I do dispute that. Tell me why. Because they are, it should have probably said claimants, but it is a capital C, and both parties were claimants. He got the payments while he's the claimant while he is alive. She is the claimant after he passes away. Their document itself that they rely on for the exact transfer does not list him as a claimant, it lists him as a payee. If he wasn't, in fact, they had an option down here, right down here at the bottom, claimant if different than payee. I think it's a bit of a travesty that you can divest somebody. Now, this ruined their marriage. That's in the record. Obviously, this ruined their marriage. He gave up, they gave up their young married life when this tragic accident happened. And those are the type of things that happen when the things, that would be her separate property, her personal claims would be her separate property, his personal injuries are his separate property. I agree, he got those payments as his separate property after the divorce. She got her separate property after the divorce. What's good for either one of them is the same way. Claimant is not defined. It is nowhere, both sides have scoured it to find any indication of what that could be, but I think they're both claimants. And Judge Davis, I agree with you, that first $300,000, that's how lawyers get paid. With regard to a lot of the language and arguments of opposing counsel on both sides, the language is not, a lot of it's argument, which we both do, we both do construction, but it's not in there. Claimant is not defined. It does not even list Mr. Hickey as the claimant. With regard to the remand issue, CASA dealt with, and they use, sometimes it's nomenclature, Your Honor, whether you're adding a party, joining a party, or identifying a party. The First Circuit chose to discuss it post the amendment. They looked at the legislative directive of the code and says Congress has indicated that federal diversity jurisdiction is defeated so long as after removal, fictitious defendants are replaced with non-diverse, named defendants, exactly what we did. That's the First Circuit case that we cited in Doliac? Yes, correct. You said at the outset, Doliac was in your briefs. They say it wasn't. That's correct. I believe it was in the trial briefs. They tried to distinguish Doliac in their briefs for three or four pages. I invite the court to read those three or four pages and say it does not distinguish Doliac or CASA at all. It creates a little misdirection. If it's the frontal central point below and then instead to us, it's Roche in 1441, no citation to Doliac to stand up and say it's 1447E in Doliac. That's just not quite as direct. I understand that. We probably absolutely should have pointed that more directly. The arguments are there. The arguments are absolutely there. The case site is not there, but it is in their case site and they address it. So I think it's before the court. But it also talks, CASA talks about 1441. Therefore, the First Circuit concluded diversity jurisdiction was lost when the court allowed the plaintiff to identify the fictitious defendants. That's exactly what we did. The second we found out who Perry was, we indained him. This court said, we agree with the First Circuit's reasoning. We find it persuasive. We hold that 1441A applies only to John Doe defendants as such, not to subsequently named parties identifying one of those fictitious defendants. That's exactly what we did. And, Your Honor, is that not common sense? We would, as Mr. Leister said, we would not be here today spending all of this time and money and resource if we had literally just known the name of the guy. I don't think the court will reach the substantive issue. I think remand is dictated by this court's precedent and the 1441A in fictitious defendants. And as I said, there's a direct line between not knowing the name of the person alleging in our original petition a named unknown payee, saying he is improperly receiving those funds. We would ask the court to reverse the trial court's decision on remand in order, in this case, to be remanded to state court. Alternatively, ask the court to reverse the summary judgment ruling. Thank you, counsel. Thank you. The case is submitted. We'll go ahead and call the roll.